[No. B101125. Second Dist., Div. Four. Dec. 5, 1997.]

In re the Marriage of MILTON DENNIS and TERI R. WALTERS.
MILTON DENNIS WALTERS, Appellant, v.
TERI R. WALTERS, Respondent.

### COUNSEL

Grayson, Maxwell & Sugarman and Barbara L. Maxwell for Appellant.

Gil Garcetti, District Attorney, Patrick D. Moran, Andrea R. Schrote and Marshall Rieger, Deputy District Attorneys, for Respondent.

### OPINION

EPSTEIN, J.—Milton Dennis Walters appeals from an order requiring him to pay child support arrearages. He claims he should not be liable for the arrearages because the custodial parent concealed the child from him until the child reached her majority. We conclude that the custodial parent's conduct does not estop the County of Los Angeles (County) from collecting child support arrearages as reimbursement for the public assistance the child received. We also conclude that where there is an order that child support be paid to the court trustee, and the custodial parent's concealment of the child does not prevent the noncustodial parent from making the child support payments, the custodial parent is not estopped from seeking arrearages.

## Factual and Procedural Summary

On February 22, 1978, an interlocutory judgment of dissolution was filed, ending the marriage of appellant Milton and respondent Teri R. Walters. Respondent was given custody of their daughter, Avaline, born June 4, 1970, and appellant was granted reasonable visitation rights. Appellant was ordered to pay child support of $75 per month, commencing March 1, 1978.

Appellant had visitation until June 4, 1978, when he went to respondent's home to see Avaline on her eighth birthday. Respondent had moved, and left no forwarding address. Appellant attempted to locate respondent and Avaline, but was not successful. He did not see or hear from Avaline until she contacted him after her 18th birthday.

Respondent and Avaline received Aid to Families with Dependent Children (AFDC) from November 1, 1977, to December 31, 1979, and from July 1, 1983, to July 31, 1985. On May 7, 1979, an order was entered requiring appellant to make his child support payments through the office of the court trustee, and appointing the district attorney to enforce the child support order. Appellant was served with this order on July 23, 1979.

Appellant did not voluntarily make any child support payments after the date of dissolution. His 1981 state income tax refund of $5.98 was applied toward his support obligation.

On November 14, 1995, appellant filed an order to show cause to establish child support arrearages. He argued that respondent was estopped from asserting a claim for child support arrearages because she had actively concealed herself and their daughter until Avaline reached the age of majority, and that the county, as respondent's assignee, is subject to the same defenses as respondent. He also argued that the county should be estopped based on its failure to assist him in locating his daughter when asked to do so.

By declaration and at the hearing, appellant presented evidence of his efforts to locate respondent and Avaline. He made weekend visits to Palmdale to look for Avaline, and would drive around the town and ask other children if they knew his daughter or had seen her. He did not make any inquiries of school officials, the Registrar of Voters, the Department of Motor Vehicles, children's services, or the police. According to appellant, in 1978 he requested respondent's address from the district attorney's child support office, but it was not released to him.

Respondent presented evidence that she moved to Palmdale in October 1979, and lived at the same address from then until 1992. She told appellant

she was moving to Palmdale prior to the move, but did not give him the address. Avaline was registered in school in Palmdale under the name "Walters," and later obtained a driver's license in the same name. Respondent had her mail forwarded from her previous address to Palmdale, but received no forwarded mail from appellant.

The district attorney submitted calculations reflecting that appellant owed assigned (welfare) child support of $15,755.50 as of January 1, 1996, and nonwelfare child support of $4,988.86 as of the same date.

The trial court found that respondent had actively concealed the child; that appellant had made reasonable and diligent efforts to locate the child; that appellant could have paid support because there was an order for payment of child support through the court trustee; and that the amount of arrearages was due to appellant's unwillingness to pay support. Based on the audit by the district attorney, the court found that appellant owed $15,755.50 in welfare arrearages payable to the county, and $4,988.86 in nonwelfare arrearages payable to respondent Teri Walters. Appellant challenges this order.

## DISCUSSION

### I

■ A proper understanding of our case requires review of a series of California Supreme Court decisions addressing the collection of child support arrearages where the custodial parent has concealed the child from the noncustodial parent.

In *Moffat* v. *Moffat* (1980) 27 Cal.3d 645 [165 Cal.Rptr. 877, 612 P.2d 967], the California Supreme Court held that a parent under a court order to pay support for a minor child must pay that support even if the custodial parent interferes with the paying parent's right to visitation. The court emphasized its disapproval of such conduct by a custodial parent, and explained: "Regardless of whether we might view this as an unjust result from the noncustodial parent's point of view, in such circumstances the child's need for sustenance must be the paramount consideration." (*Id.* at p. 651.) The court noted that a noncustodial parent deprived of visitation was not without remedies, such as seeking enforcement of the judgment, order, or decree in the rendering court, obtaining sanctions against the custodial parent, or seeking a change of custody or other modification of the custody or support provisions of the original decree. (*Id.* at pp. 651-652.)

In *In re Marriage of Damico* (1994) 7 Cal.4th 673 [29 Cal.Rptr.2d 787, 872 P.2d 126], the Supreme Court dealt with actual concealment of the child,

rather than mere interference with visitation. The court held that "a custodial parent who actively conceals him- or herself and the child from the noncustodial parent until the child reaches the age of majority, despite reasonably diligent efforts by the noncustodial parent to locate them, is estopped from later collecting child support arrearages for the time of the concealment. Because it is the inability to make the support payments that distinguishes concealment from mere interference, the concealment, to be a defense, must be of both the custodial parent and the child." (*Id.* at p. 685.)

The court did not rest its decision on the fact that concealment is an extreme interference with visitation rights, because under Family Code sections 4845 and 3556, interference with visitation does not affect enforcement of a child support order. The court focused instead on the fact that concealment "effectively precludes the noncustodial parent from invoking or benefiting from the remedies for interference that we identified in *Moffat, supra*, 27 Cal.3d at page 652, and precludes the very child support payments that the custodial parent later seeks to collect. One cannot make child support payments to a person who cannot be located. Concealment thus defeats the entire purpose of the order, which is to provide support to a third party, the child. In finding an estoppel defense under these facts, we rely on the unfairness of enforcing a judgment against a person who had no clear way of paying the monthly obligation because the custodial parent had gone into hiding. It is unfair to let the parent hide during the term of the obligation—usually a lengthy term—and then reappear and demand payment of arrearages in full after he or she has defeated the purpose of the judgment." (*In re Marriage of Damico, supra*, 7 Cal.4th at p. 683, italics omitted.)

The *Damico* court expressly declined to decide what rule should apply in cases where the concealment ends while the child is still a minor and might yet benefit from the payment of arrearages, or in cases where public assistance payments have been made, or child support rights have been assigned to a county or other governmental agency. (7 Cal.4th at p. 685.)

The issues unanswered in *Damico* were presented in *In re Marriage of Comer* (1996) 14 Cal.4th 504 [59 Cal.Rptr.2d 155, 927 P.2d 265]. In that case, the concealment terminated before the children reached the age of majority, and the custodial parent had received AFDC benefits during a portion of the time for which arrearages were sought.

As to the first issue, the court reaffirmed the principle that " 'the actions of one parent should not diminish the *child's* right to support' [citation]" and held that ". . . a custodial parent's concealment of himself or herself and the child, which concealment ends when the child still is a minor, does not

establish a defense to an action, brought on behalf of the child, for child support arrearages." (*In re Marriage of Comer, supra*, 14 Cal.4th at p. 517, original italics.)

Turning to the second question, the court relied on two Court of Appeal cases, *In re Marriage of Shore* (1977) 71 Cal.App.3d 290 [139 Cal.Rptr. 349], and *In re Marriage of Lugo* (1985) 170 Cal.App.3d 427 [217 Cal.Rptr. 74] to refute the noncustodial parent's contention "that improper conduct by the custodial parent operates to prevent the county, as provider of public assistance payments, from obtaining reimbursement for those payments made. *Shore* instead teaches that after a custodial parent has executed an assignment of rights in order to obtain AFDC payments, that parent's subsequent conduct . . . may not be used to deny the county the right to obtain reimbursement of AFDC payments from the noncustodial parent. *Lugo* is supportive of the Attorney General's contention that the county that furnishes AFDC benefits has a statutory right to obtain reimbursement from the primary obligor for benefits already provided, as well as for ongoing support. *Lugo* also follows the well-established rule that, unless a county has done an affirmative act or made an affirmative representation that induces reliance, no estoppel will be found." (*In re Marriage of Comer, supra*, 14 Cal.4th at p. 523.)

The court emphasized "the important public policy favoring protection of the public fisc. That policy clearly is reflected in the applicable California statutes [citations] and in the language of the federal statute that requires AFDC grants to a state to be conditioned upon the state's obtaining from the welfare applicant or recipient an assignment of any rights to support. [Citation.] When a public agency is asked to provide financial assistance by a custodial parent who is not receiving court-ordered support from the noncustodial parent, public policy strongly favors that agency's entitlement to seek reimbursement for funds released to the family. [Citations.] Such reimbursement helps ensure that public funds will be available for distribution to other families with similar needs." (*In re Marriage of Comer, supra*, 14 Cal.4th at pp. 527-528.)

■  With these cases in mind, we turn to the issues in our case. First we consider whether the county is estopped from obtaining reimbursement of AFDC benefits paid on behalf of the child. *Comer* makes it clear that improper conduct by the custodial parent does not prevent the county from obtaining reimbursement from the noncustodial parent for public assistance payments made for the support of the child. (14 Cal.4th at p. 523.) That holding is not dependent on whether the individual child is still a minor, since the funds reimbursed are not used to support the noncustodial parent's

child. Instead, the reimbursement is needed to "ensure that public funds will be available for distribution to other families with similar needs." (*Id.* at p. 528.)

Respondent received AFDC benefits from November 1, 1977, to December 31, 1979, and from July 1, 1983, to July 31, 1985. The interlocutory judgment of dissolution ordering appellant to pay child support was entered on February 22, 1978.

Appellant acknowledged at trial that he knew "early on" that the district attorney's office was trying to collect child support and testified that he received notices from the district attorney's office for 16 or 17 years. In 1978 appellant went to the Van Nuys District Attorney's Child Support Office, in response to a letter demanding money for child support. In July 1979, appellant was served with the order requiring him to make the child support payments to the court trustee. The record precludes any claim that appellant did not know where to make the ordered child support payments during the periods when respondent was receiving AFDC benefits.

Appellant argues instead that county should be equitably estopped from obtaining reimbursement because it failed to assist him in locating his daughter. It is settled that ". . . unless a county has done an affirmative act or made an affirmative representation that induces reliance, no estoppel will be found." (*In re Marriage of Comer, supra,* 14 Cal.4th at p. 523.) It is also established that ". . . an estoppel will not be raised against a county when to do so would nullify ' "a strong rule of policy, adopted for the benefit of the public, . . ." ' [Citations.]" (*In re Marriage of Lugo, supra,* 170 Cal.App.3d at p. 435.)

The factual basis for appellant's estoppel claim against the county is set out in his declaration: "In 1978 I went to the Child Support Office on Ventura Boulevard near the Van Nuys airport. I believe it is in Van Nuys. I had received a letter from them demanding money and asking me to come to their office. [¶] When I went I spoke to a woman employee and told her I could not find my daughter. She informed me that they would not give me that information, their only function was to collect money. I never contacted the Canyon Country Children's Services Office because I had already been told by the office in Van Nuys that they would not give out that information."

This conduct, appellant argues, was a violation of the county's statutory obligations under Family Code section 3131, which provides that where a child has been taken or detained by another person in violation of a custody

or visitation order, "the district attorney shall take all actions necessary to locate and return the child and the person who violated the order and to assist in the enforcement of the custody or visitation order or other order of the court by use of an appropriate civil or criminal proceeding." He also claims the county violated Welfare and Institutions Code section 11478, which requires all state, county, and local agencies to cooperate with the district attorney in the location, seizure, and recovery of abducted, concealed, or detained minor children.

The problem with this argument is that appellant never sought such assistance. He asked a worker in the child support office in Van Nuys to give him his daughter's address. When she said she could not provide that information, he did not pursue the matter further through any county agency. Having failed to make any direct request to the district attorney for assistance in locating his daughter, appellant cannot now complain that county failed to provide that assistance. Nor has he presented any evidence of affirmative acts or representations by county which induced his reliance. There is no evidentiary support for appellant's claim that the county should be estopped from collecting child support arrearages.

Equally important is the strong public policy which would be nullified if estoppel were applied against the county in this instance. As explained in *Comer*, public policy strongly favors a public agency's entitlement to seek reimbursement for financial assistance the agency has provided to the noncustodial parent's child. (*In re Marriage of Comer, supra*, 14 Cal.4th at p. 527.) The trial court properly rejected appellant's claim that the county should be estopped from collecting arrearages as reimbursement for AFDC payments made for the benefit of appellant's child.

## II

The question of estoppel is closer as to the nonwelfare arrearages. In *Damico*, the Supreme Court held that a custodial parent who actively conceals herself and the child from the noncustodial parent until the child reaches the age of majority is estopped from later collecting child support arrearages for the time of the concealment. (*In re Marriage of Damico, supra*, 7 Cal.4th at p. 685.) The court rested its decision on the fact that the concealment precluded the payment of child support and hence defeated the purpose of the judgment, which was the support of the child, and it also precluded the noncustodial parent from invoking remedies which would assist in locating the child. (*Id.* at p. 683.)

Our case differs from *Damico* in one significant aspect—during the nonwelfare periods (when respondent was not collecting AFDC), appellant

was under court order to make child support payments to the court trustee. The fact that respondent concealed herself and the child did not prevent appellant from making the ordered child support payments to the trustee.

Concealment alone does not provide a defense to a child support obligation. As the Supreme Court explained in *Damico*: "Concealment of the custodial parent and child from the noncustodial parent until the child is an adult interferes in an extreme manner with visitation rights. To the extent it does only that, however, it arguably is but a species of interference within the meaning of Code of Civil Procedure former section 1694 (now Fam. Code, § 4845) and Civil Code former section 4382 (now Fam. Code, § 3556), which interference does not prevent enforcement of the child support order." (*In re Marriage of Damico, supra*, 7 Cal.4th at pp. 682-683; *Moffat* v. *Moffat, supra*, 27 Cal.3d 645.) While we disapprove of respondent's conduct in actively concealing herself and the child from appellant, that concealment did not prevent appellant from meeting his child support obligation which required payment to the court trustee. Under *Damico*, the elements of an estoppel are not present, and appellant remains liable for the nonwelfare child support arrearages.

DISPOSITION

The order is affirmed.

Vogel (C. S.), P. J., and Hastings, J., concurred.